IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK D. BEATS, | : | CIVIL ACTION NO. **1:CV-07-1589** |
| Plaintiff | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security, | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Frank D. Beats, is seeking review of the decision of the Commissioner of Social Security (Commissioner) that denied his claim for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act (Act).  42 U.S.C. §§ 1381-1383(f).

**I.    PROCEDURAL HISTORY.**

Plaintiff protectively filed an application for SSI on August 9, 2005, alleging disability since November 1, 1997 due to ongoing psychological symptoms and a degree of treatment rendering him incapable of performing competitive employment on a sustained basis.[1]  (R. 21, 25, 115-119).  The state agency denied his claim initially on October 21, 2005.  (R. 21). On November 15, 2005, Plaintiff filed a timely request for a hearing (R. 21) and a hearing was held before an Administrative Law Judge (ALJ) on October 3, 2006.  (R. 27-79).  At the hearing, Plaintiff, represented by counsel, and a vocational expert (VE) testified.  (R. 32-79). Plaintiff was denied benefits pursuant to the ALJ's decision of November 2, 2006.  (R. 21-26).

Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 14-16). Plaintiff's request was denied on June 28, 2007 (R. 5-7), thereby making the ALJ's decision

---

[1] At the hearing, the Plaintiff, through his representative, Neil A. Grover, amended his alleged disability onset date to August 9, 2005.  (R. 21).

the "final decision" of the Commissioner.  42 U.S.C. § 405(g).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 15 and 18).

**II.     STANDARD OF REVIEW.**

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

**III.    ELIGIBILITY EVALUATION PROCESS.**

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520.  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir.

1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920.

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity."  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider whether the Plaintiff establishes that he is unable to perform his past relevant work.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).  The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work.  *Plummer*, 186 F.3d at 428.  Then, the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f).  This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id*.

In the present matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 23-26).  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful work since his alleged disability onset date, August 9, 2005.  (R. 23).  At step two, the ALJ concluded that the Plaintiff's affective disorders (major depression, bipolar), personality disorder, and history of drug and alcohol abuse were severe impairments within the meaning of the Regulations.  (R. 23).  At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments severe enough to meet or medically equal the requirements under the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  (R. 23).  The ALJ paid particular attention to

Listing 12.04, *et seq.*, but found that Plaintiff failed to meet the listing requirements. (R. 24).

At step four, the ALJ found that Plaintiff is capable of performing his past relevant work as a dishwasher and laborer. (R. 26). At step five, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to perform work at all exertional levels but is limited to simple, unskilled, low-stress work that involves working directly with the public, assembly lines, or similar production-oriented environment. (R. 24-25). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. (R. 26). 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV.   BACKGROUND.

### A. Factual Background.

On his alleged disability onset date, Plaintiff was forty-nine years old and considered a "younger person" under the Regulations. At the time of the ALJ hearing, the Plaintiff was fifty years old and considered a "person closely approaching advanced age". (R. 74); 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff graduated high school in regular classes. (R. 34). He has past relevant work experience as a dishwasher and laborer. (R. 74-75). Plaintiff has not attempted to return to work since his alleged disability onset date, August 9, 2005. (R. 133). Plaintiff is single and lives in a Controlled Residential Rehabilitation with eight other people in his household. (R. 32-33). Plaintiff has applied for and received approval to live in Section 8 housing. (R. 59).

Plaintiff testified that he is unable to work because he still has periods of depression and sometimes hears voices slightly. (R. 59). He takes his medications every day at eight o'clock in the morning and eight o'clock at night in front of the staff at his living facility. (R. 70). Plaintiff has been treating the longest with Lou Picchio, M.D., at Northwestern Human Services Community Treatment Team. (R. 46).

Plaintiff also testified that he occupies his days by going to a mental health social facility to meet new friends and watch television. (R. 63). Plaintiff's living facility staff allows him to leave the house every day unattended. (R. 57). The director of PhilHaven, one of Plaintiff's treatment centers, even trusts Plaintiff to ride his bike to the center. (R. 57).

Vocational expert, Sheryl L. Bustin, testified based on the *Dictionary of Occupational Titles*. (R. 72-79). The VE stated that Plaintiff was fifty years old and considered a person approaching advanced age. (R. 74). Plaintiff would have been forty-nine years old and considered a younger individual on his alleged disability onset date, August 9, 2005. (R. 74). Plaintiff has a high school education. (R. 74). Plaintiff's past relevant work as a dishwasher and laborer are both classified as unskilled work that is customarily performed at a medium exertional level. (R. 74-75).

The ALJ asked the VE to consider Plaintiff to have the following residual functional capacity (RFC): the individual requires normal work breaks, the individual cannot work in any environment that involves or has within that environment, alcohol, drugs, prescription drugs, or any kind of drugs; individual is limited to unskilled work; must avoid working in high exposed places and around fast moving machinery on the ground; is limited to occasional work directly with the public, and limited to occasional work on an assembly line or similar production oriented environment. (R. 75-76). The VE testified that Plaintiff would be able to perform his past relevant work as actually and customarily performed. (R. 76-77).

### B. Medical Background.

Plaintiff was seen by Dr. Lou Picchio at Northwestern Human Services Community Treatment Team on September 6, 2005 for a twenty minute psychiatric visit. (R. 322). Plaintiff reported that his depression comes and goes. (R. 322). Plaintiff also requested to be placed on Lexapro again because he felt the most stable on that particular antidepressant, as opposed to fluoxetine. (R. 322). Upon mental status examination, Dr. Picchio noted that Plaintiff spoke in a normal rate and tone, displayed a normal variable affect, his thoughts were goal directed, he did not fulfill criteria for recurrent major depression, other than his subjective mood, he was eating and sleeping, and had good energy and good concentration. (R. 322). Dr. Picchio's plan was to prescribe Lexapro, discontinue fluoxetine, have the Plaintiff continue with lithium carbonate, Seroquel, and continue his recovery work through New View, and Community Treatment Team (CTT) support. (R. 322). Dr. Picchio noted that he would see Plaintiff back in three weeks for further follow-up. (R. 322).

Plaintiff returned to see Dr. Picchio for a thirty minute psychiatric follow-up visit on September 27, 2005. (R. 405). Dr. Picchio noted that Plaintiff remained sober off of alcohol, marijuana, and cocaine and continued to live at New View. (R. 405). Dr. Picchio also noted that Plaintiff started to attend PhilHaven's Day Treatment Program for the dually diagnosed and reported that he rests well through the night but that at times his thoughts can get fast. (R. 405). The mental status examination indicated that Plaintiff was well-dressed and well-groomed, spoke at a normal rate and tone and appeared calm. (R. 405). Dr. Picchio's impression of Plaintiff was bipolar disorder, NOS, and poly-substance dependence in remission. (R. 405). His plan for the Plaintiff was to increase the Lithium dosage, but maintain the current dosages of other medications and continue treatment. (R. 405).

Plaintiff returned to see Dr. Picchio on October 17, 2005 for his yearly psychiatric update with the Community Treatment Team. (R. 406). It was noted that the Plaintiff was incarcerated at Dauphin County Prison from October 22, 2004 to July 28, 2005 for probation violations. (R. 406). In January 2004, Plaintiff stole caffeine tablets from Rite-Aid and was convicted of theft. (R. 406). Dr. Picchio first saw Plaintiff when he was discharged from Dauphin County Prison to New View, a halfway house. (R. 406). Dr. Picchio stressed that since being admitted to New View, Plaintiff was doing exceptionally well. (R. 406). Plaintiff attended day treatment at the PhilHaven Dual Diagnosis Center five mornings per week and attended three Double Trouble meetings per week at New View. (R. 406).

Plaintiff stated that he hoped to re-enter the workforce repairing small electrical appliances. (R. 408). The mental status examination revealed that Plaintiff displayed a normal variable affect, he smiled, and interacted appropriately. (R. 408). Also, Dr. Picchio explained that the lithium carbonate medication had a positive impact on Plaintiff by eliminating symptoms consistent with mania or hypomania. (R. 408). Dr. Picchio does not endorse symptoms consistent with major depression. (R. 408). Dr. Picchio assessed a

Global Assessment of Functioning (GAF) score of 65, which indicates only mild symptoms.[2] (R. 409).

State-agency psychologist, John Gavarri, Psy.D., assessed Plaintiff's residual functional capacity on October 18, 2005. (R. 337-339). Dr. Gavarri noted that the medical evidence established medically determinable impairments of Major Depressive Disorder and Alcohol Dependence. (R. 339). Dr. Gavarri also noted that Plaintiff's ability to understand and remember complex or detailed instructions was limited, however, he would be expected to understand and remember simple one and two-step instructions. (R. 339). Dr. Gavarri noted that the Plaintiff struggled with responding appropriately to criticism and following direction from authority. (R. 339). Dr. Gavarri ultimately concluded that the Plaintiff is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments. (R. 339).

Plaintiff returned to his monthly follow-up visits with Dr. Picchio from November 2005 through June 2006. (R. 396-403). Plaintiff reported sadness about his lack of a relationship with his sister, but each visit showed that the Plaintiff was doing very well otherwise, with no abnormalities. (R. 396-397, 399-402). Plaintiff's lab work results and mental status were reported as normal. (R. 403). Dr. Picchio reported that Plaintiff's bipolar disorder, NOS, and poly-substance abuse dependence were in remission. (R. 396-397, 399, 401, 403).

On June 7, 2006, Plaintiff's treatment team at PhilHaven noted that he had talked about wanting to move out of the group home. (R. 426). At a dual diagnosis education

---

[2] The Global Assessment of Functioning (GAF) Scale is used for reporting the clinician's judgment of the individual's overall level of functioning with respect to psychological, social, and occupational functioning. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision 32 (2000). A GAF score between sixty-one and seventy indicates some mild symptoms (e.g., depressed mood and mild insomnia) or mild difficulty in social, occupational, or school functioning, but generally functioning pretty well and having some meaningful interpersonal relationships. *Id.* at 34.

meeting on September 15, 2006 it was noted that Plaintiff planned on talking to his residential program director to request assistance with moving to a new apartment. (R. 443).

On July 17, 2006, Deborah Filanowksi, M.A., wrote a letter stating that Plaintiff has resided at Gaudenzia New View from July 27, 2006 to the present. (R. 395). Ms. Filanowksi explained that New View is a Community Residential Rehabilitation Service (CRRS) provider licensed by Mental Health. (R. 395). Ms. Filanowski also stated that Plaintiff was not able to be employed at the time due to his ongoing mental illness and the need to develop significant recovery time. (R. 395). On October 2, 2006, Michael McCartney, the director of Dual Diagnosis Services at PhilHaven, recommended that Plaintiff not pursue employment during his involvement in mental health treatment. (R. 509).

**V.    DISCUSSION.**

Plaintiff argues that the ALJ erred in the following ways: (1) by failing to apply or follow the treating physician rule and (2) by failing to present a hypothetical question that included all of Plaintiff's impairments and limitations as established by the record. (Doc. 15 at 7-11).

***A. Whether the ALJ erred by failing to apply or follow the treating physician rule.***

Plaintiff states that the ALJ examined the medical records "with an eye seemingly preset on denying of benefits" and ignored Dr. McCartney's opinion that Plaintiff's employment would cause a regression. (Doc. 15 at 8). Plaintiff also argues that Dr. McCartney's opinion was supported by a long record of past events, past hospitalizations, and poor mental health. (Doc. 15 at 9). Plaintiff notes that Dr. McCartney's opinion was consistent with the remainder of the record and lay testimony except for the opinion of the non-treating, non-examining state agency report writer who found that Plaintiff was able to function at work. (Doc. 15 at 9). Plaintiff states that the ALJ accorded great weight to the opinion of the state-agency psychologist without explaining how she reconciled its internal inconsistencies. (Doc. 15 at 9).

Defendant responds to Plaintiff's arguments by stating that the ALJ correctly afforded little weight to Dr. McCartney's opinion that Plaintiff should not pursue employment during

his mental health treatment. (Doc. 18 at 10). Defendant argues that the ALJ correctly noted that Dr. McCartney's opinion did not provide an assessment of Plaintiff's ability to engage in work-related activities or specific functional limitations. (Doc. 18 at 10) (R. 26). Defendant also argues that the ALJ correctly noted that Dr. McCartney's opinion was inconsistent with the evidence of record in three ways. (Doc. 18 at 10). Defendant notes that Dr. McCartney's opinion was inconsistent with the observations made by Plaintiff's treating psychiatrist, inconsistent with Plaintiff's daily activities, and inconsistent with the opinion of the state-agency psychologist, Dr. Gavarri, who concluded that Plaintiff remained capable of meeting the basic mental demands of competitive work on a sustained basis. (Doc. 18 at 10-11) (R. 339).

The Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000). The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent v. Schweiker*, 710 F.2d 110, 115.

*Id*. at 317-18. The ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). Although he must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the ALJ] will give that opinion. 20 C.F.R. § 404.1527(d)(3). While treating

9

physicians' opinions may be given more weight, there must be relevant evidence to support the opinion. 20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

"The only reasons for an ALJ to reject a treating physician's opinion are 'on the basis of contradictory medical evidence,' or if the opinion is unsupported by medical data." *Kurilla v. Barnhart,* 2005 WL 2704887 at *5 (E.D. Pa. Oct. 18, 2005) (quoting *Plummer,* 186 F.3d at 429 and citing *Newhouse v. Heckler,* 753 F.2d 283 (3d Cir.1985)).

The ALJ found that progress records from Dr. Picchio indicate that Plaintiff is doing well, with no documented symptoms or findings consistent with the diagnosis of a major depressive or bipolar disorder. (R. 25). The ALJ also found that Plaintiff's capacity for work was somewhat limited but not to the extent alleged and the Plaintiff could work at night, which would allow him to attend his therapy and appointments during the day. (R. 25). The ALJ noted that Dr. McCartney's opinion does not provide an assessment of Plaintiff's work-related abilities or limitations and is not supported by the mental health treatment records, which indicate the Plaintiff is doing well with a GAF score of 65. (R. 26). The ALJ also noted that a GAF of 65 indicates essentially normal mental status examinations and increasing freedom and social activities and therefore Dr. McCartney's opinion was given little weight. (R. 26). Overall, the ALJ found that the state-agency assessment, which found the Plaintiff is capable of performing unskilled work on a sustained basis was given significant weight because it is supported by the record as a whole. (R. 26, 337-339).

Moreover, the VE testified that Plaintiff could perform his past relevant work. (R. 75-76). That testimony, coupled with all the other evidence of record, constitutes substantial evidence to support the ALJ's decision that the Plaintiff was not disabled. *See Chrupcala v. Heckler*, 829 F.2d 1269 (3d Cir. 1987). Therefore, there is a significant basis for a determination that the ALJ did not err in applying or following the treating physician rule.

### B. Whether the ALJ erred by failing to present a hypothetical question that included all of Plaintiff's impairments and limitations as established by the record.

Plaintiff's second argument is that the ALJ erred by failing to include all of Plaintiff's impairments in the hypothetical questions posed to the vocational expert. (Doc. 15 at 9). Plaintiff states that the hypothetical question assumed an RFC that was inconsistent with the weight of the mental health records, the opinions of the treating mental health providers and the lay opinions of the director of the home where the Plaintiff was residing, as well as the Plaintiff's credible testimony. (R. 9-10). Plaintiff argues that a mental health patient's exertional abilities often have little to do with the extraordinary limits they face and the ALJ improperly ignored this distinction in the hypothetical to the VE. (Doc. 15 at 10-11).

Defendant states that the ALJ's hypothetical questions included all of Plaintiff's credible impairments and the Plaintiff's argument is baseless. (Doc. 18 at 12). Defendant also states that Plaintiff has not even identified any particular functional limitations which he believes the ALJ omitted from the hypothetical question. (Doc. 18 at 12). Defendant argues that the limitations posed in the hypothetical question generously accommodate an individual such as Plaintiff, who is doing exceptionally well with his alcohol and drug abuse recovery, and with medication that stabilized his mental impairment. (Doc. 18 at 13). Defendant finally states that the VE testified that an individual with these limitations could perform Plaintiff's past work as either a dishwasher or a laborer as actually or generally performed. (Doc. 18 at 13) (R. 76-77).

A hypothetical question must include all of a claimant's impairments which are supported by the record; one which omits limitations is defective and the answer thereto cannot constitute substantial evidence to support denial of a claim. *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004); *Chrupcala*, 829 F.2d at 1276; *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). When forming his hypothetical questions, the ALJ included the impairments established by the record. The ALJ asked the VE to hypothetically consider

an individual that would require normal work breaks; cannot work around alcohol or drugs; is limited to unskilled work; must avoid working in high exposed places and around fast moving machinery on the ground; is limited to occasional work directly with the public, and is limited to occasional work on an assembly line or similar production oriented environment. (R. 75-76).  The VE testified that such an individual would be able to perform the Plaintiff's past relevant work as actually and customarily performed. (R. 76-77).

The VE then stated that if that same hypothetical individual was required to maintain his mental health treatment by attending meetings five days a week for two to five hours per day, the individual's ability to work would be affected. (R. 77).  However, the VE stated that the individual would nevertheless be able to maintain employment by working the night shift. (R. 77).  The VE further stated that if the individual missed one day of work a week to attend mental health treatment, his employability would be affected as most employers would not permit five absences per month. (R. 78).

There is a significant basis for a determination that the ALJ did not err in posing her hypothetical questions and the questions included all of Plaintiff's limitations as supported by the record.  *See Chrupcala*, 829 F.2d at 1276.  When an ALJ's hypothetical question to a vocational expert sets forth the Plaintiff's limitations, as supported by the record, the vocational expert's response may be accepted as substantial evidence in support of the ALJ's determination that the Plaintiff is not disabled.  *Id*.  Therefore, the vocational expert's response to the questions constitutes substantial evidence in support of the ALJ's determination that the Plaintiff was not disabled under the Act.

**VI.     RECOMMENDATION.**

Based on the foregoing, it is respectfully recommended that Plaintiff's appeal be DENIED.


                                                                **s/ Thomas M. Blewitt**
                                                                **THOMAS M. BLEWITT**
                                                                **United States Magistrate Judge**

**Dated: July 14, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK D. BEATS, | : | CIVIL ACTION NO. **1:CV-07-1589** |
| Plaintiff | : | (Judge Caldwell) |
| v. | : | (Magistrate Judge Blewitt) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | : | |
| Defendant | : | |

## **NOTICE**

_____NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated July 14 2008.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings

or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                      **s/ Thomas M. Blewitt**
                                                      **THOMAS M. BLEWITT**
                                                      **United States Magistrate Judge**

**Dated: July 14 2008**